UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JERROD L. DAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:15-cv-1615-DKL-TWP |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

*Entry on Judicial Review*

Jerrod L. Day applied for child disability benefits and supplemental security income disability benefits under the Social Security Act. The Commissioner of Social Security denied his applications. Day appeals. The parties have consented to the Magistrate Judge's exercise of jurisdiction, and the District Judge referred the case to the undersigned to conduct all proceedings and enter judgment in this matter pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. The Court decides as follows.

**I. Background**

Day alleges disability due to mental and physical impairments, including varicose veins of the legs and Scheuermann's kyphosis (a disease in which the thoracic spine bends forward more than normal, causing back pain). He alleges that he became disabled on August 20, 2005, when he was 15 years old.

Day testified at the May 2014 hearing before the ALJ that he was 24 years old, he lived with his parents, and he has never worked. [R. 440-41.] He stated that the medical problems that prevented him from working were the conditions in his back, chronic pain, and swelling in his legs. [R. 444.] He had been diagnosed with thrombosed varicose vein syndrome, he had pitting edema, and he had had clots in his legs the past two years. [R. 445.] The varicose veins and pitting edema caused severe pain [R. 449], which was adequately controlled by medication. [R. 445.] At the time of the hearing, however, Day was not taking any medications because he could not afford them. [R. 441.] He rated the current pain in his lower legs, back, and spine as an 8 out of 10. [R. 445.] He had no Medicaid or other insurance. [R. 443.] He last saw his primary care physician John B. Hittle, M.D., in August 2013; Day had not seen the doctor since then because he owed him a bill and could not pay it. [R. 444.]

In addition to his physical impairments, Day said that he had problems with depression and anxiety. He was afraid to leave his house by himself and did not go anywhere alone. [R. 448.] Because of his depression, he stated that two or three days each week he did not get up and get dressed; on such days he would miss work. [R. 449.] He did not believe that he could concentrate on a task for two hours at a time. [*Id.*] He received mental health treatment on two occasions, but he did not like it and he decided not to return. [R. 450.]

Dr. James Brooks, a psychologist, testified at the hearing that the record did not contain any formal mental health treatment records or diagnoses. [R. 437-38.] He noted that between January and March of 2012, Day complained about symptoms of depression

and was diagnosed with depression not otherwise specified; but his symptoms had resolved by April 2012. [*Id.*] Dr. Brooks did not find the presence of any severe mental disorder, and therefore he found no psychological impairments. [R. 438.] Nor did he see any evidence in the record to suggest that it would be helpful to the ALJ to receive a psychological evaluation of Day. [R. 440.]

Dr. Anthony E. Francis, an orthopedic surgeon, also testified at the hearing. He had received Exhibits 1F to 10F and Claimant's Exhibits A through L but he had not received Claimant's Exhibits M, N, and O. Therefore, the ALJ summarized those three exhibits for Dr. Francis and gave counsel an opportunity to supplement her summary. [R. 454.] Exhibit M consists of records from Dr. Hittle from December 2012 to August 2013. [R. 362-75.] It includes results from Day's October 7, 2012 chest x-ray, which showed no acute abnormality [R. 366], and progress notes from December 5, April 10, and August 7. (Apparently the chest x-ray report was sent to Dr. Hittle in December 2012). After summarizing the Exhibit M, the ALJ asked Day's counsel if there was anything else he wanted to highlight from the documents, and counsel responded in the negative. [R. 457.]

Exhibit N is an emergency room record of Day's visit to Hancock Regional Hospital on October 7, 2012. [R. 376-379.] Day complained of chest pain from a fall. [R. 377.] He was examined and his chest was x-rayed. He was discharged with a diagnosis of chest wall contusion and instructed to take pain medications as needed, see his primary care physician in two to three days if he was not improving, and return to the emergency room if he had trouble breathing or other concerns. After the ALJ summarized Exhibit

3

N, she asked Day's counsel if there was anything else on the exhibit that she needed to summarize for the medical expert, and counsel responded in the negative. [R. 455.]

Exhibit O is simply counsel's cover letter to the ALJ indicating that the exhibits and an exhibit list are enclosed for filing prior to the hearing. [R. 381.] As such, there was no medical evidence in that exhibit to summarize for the medical expert.

Dr. Francis testified that Day was a chronic musculoskeletal pain case. [R. 458.] Day had been diagnosed with Scheuermann's Disease, which caused inflammation in the spinal disc, usually in the thoracic spine, and caused pain, but that condition generally was not a long-term problem. Day also had some compression fractures and kyphosis, which can cause pain. [R. 459.] He had a very long history of taking prescribed controlled substances, including Methadone, Hydrocodone, and Narco, which could cause a situation in which the patient's perception of pain is increased. Dr. Francis stated that Day had a few things that could potentially be the source of pain: kyphosis, Scheuermann's Disease, and compression fractures; Day's scoliosis was at worst a fairly minor cosmetic problem. [R. 461.] The doctor testified that if Day could function at the sedentary level, he would not be at the listing level of severity. [R. 462.] Dr. Francis opined that Day could function at the light exertional level. [R. 465, 467.]

ALJ Blanca B. de la Torre utilized the five-step sequential evaluation analysis in making her decision in this case. She found that Day had not engaged in substantial gainful activity since his alleged onset date of August 20, 2005, and that he had severe impairments of obesity, varicose veins, and Scheuermann's kyphosis. However, she found that he does not have an impairment or combination of impairments that meets or

medically equals the severity of a listed impairment. [R. 19, 24.] The ALJ determined that Day had the residual functional capacity ("RFC") to perform work within the light range as follows:

> he is able to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; to sit for 1 hour at a time and for a total of 6 hours in an 8-hour workday; to stand for 1 hour at a time and for a total of 4 hours in an 8-hour workday; and to walk for 1 hour at a time and for a total of 4 hours in an 8-hour workday. He cannot work on ladders, ropes, or scaffolds; kneel or crawl. Occasionally he is able to climb stairs and ramps, balance, stoop and crouch. He cannot tolerate any exposure to unprotected heights and dangerous machinery. He cannot tolerate concentrated exposure to extreme cold, extreme heat, or industrial vibrations.

[R. 27.] Day had no relevant past work experience. Based on his age, education, and the vocational expert's testimony, the ALJ found that there were a significant number of jobs that Day could perform. [R. 32.] Therefore she concluded that he was not disabled under the Social Security Act. The Appeals Council denied review and Day filed this action, seeking judicial review.

## II. Discussion

Judicial review of the ALJ's decision is limited to determining whether the findings of fact are supported by substantial evidence and whether the ALJ made any legal error. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court reviews the entire record but does not reweigh the evidence, resolve conflicts

in the record, make credibility determinations, or substitute its own judgment for that of the ALJ. *See Stepp*, 795 F.3d at 718; *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). The ALJ "need not mention every snippet of evidence in the record," *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012), but she must build a "logical bridge" between the evidence and her conclusions, *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). And the ALJ "may not ignore entire lines of contrary evidence." *Arnett*, 676 F.3d at 592.

In seeking judicial review, Day makes several undeveloped and unsupported arguments. For example, he begins with this: "[T]he ALJ ignored or rejected all of the evidence proving he was disabled, ending by substituting her erroneous opinions for the opinions of the claimant's treating and examining physicians." [*Pl.'s Br. Supp. Compl. Review Decision of Social Security Admin.*, doc. 25, at 11.] As another example, he argues that "[t]he ALJ's refusal to consider the evidence proving [his] case requires reversal of the denial decision." [*Id.* at 12.] And he submits that the ALJ failed to build a logical bridge from the evidence to her conclusions. [*Id.* at 13.] But Day fails to point out what evidence the ALJ supposedly ignored or erroneously rejected. Nor does he develop these other arguments. "[P]erfunctory and undeveloped arguments … are waived." *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013). These specific instances of perfunctory and undeveloped arguments are but a few examples of those asserted by Day; however, all such arguments have been waived.

Yet Day does make some developed arguments. He first contends that the ALJ erred in rejecting Dr. Varsha B. Nargarsenker's July 13, 2011 evaluation. Day visited Dr. Nargarsenker on that date for a consultative physical exam. Although Day asserts that

6

the physician determined that his "pain was constant," he "could not do any housework," he has not been able "to do much of anything because of the pain," and he "could sit or stand for about 45 minutes," [*Pl.'s Br.*, doc. 25 at 11], he refers to the portion of the treatment record ("History of Present Illness") that simply repeats his own subjective report to the physician about his condition. [R. 235.] These statements are not rooted in the physician's findings on examination of Day; nor do they reflect her opinions as to his functioning; those comes later in her report. Rather, on exam, Dr. Nargarsenker found Day to be in no apparent distress. Although he was tender throughout his spine, his gait was normal, he had normal strength in his upper and lower extremities, and he had normal range of motion except for shoulder abduction. [R. 236.] Dr. Nargarsenker opined that Day:

> Can sit or stand for 1 hour at a time. Can walk 500 feet. Can lift up to 20 lbs occasionally. No limitations with fine motor movements. Can bend infrequently. Would avoid twisting, squatting. No issues with balance.

[*Id.*] She noted that Day "appears to have a depressed affect" and would recommend a neuropsychological evaluation because he does not make eye contact and may have issues interacting with others. [*Id.*]

Rather than rejecting Dr. Nargarsenker's opinion, however, ALJ de la Torre gave it "great weight," explaining that the physician had examined Day and her opinion was consistent with Dr. Hittle's records, Dr. Francis's opinions, and the state agency medical consultants' opinions. [R. 30.] As the Commissioner argues, much of Dr. Nargarsenker's opinion is consistent with the ALJ's RFC finding, and Day fails to identify any limitation Dr. Nargarsenker found that was not accommodated in the RFC finding.

7

However, the Court suspects that the restriction to "Can walk 500 feet" could be inconsistent with the ALJ's finding that Day could walk for 1 hour at a time. Nonetheless, the ALJ's finding that Day could walk 1 hour at a time and up to 4 hours a day was supported by the opinions of Dr. J. Sands and Dr. B. Whitley, the state agency medical consultants who determined that Day could perform light work with some postural limitations, including an ability to stand and/or walk for a total of about 6 hours in an 8-hour workday. [R. 240-48.] The finding was also supported by the opinions of Dr. Hittle, Day's primary care physician, who thought Day was exaggerating his pain [R. 340, 343, 346] and who wrote in December 2012 that he has "not endorsed [Day] being physically disabled." [R. 365.] Dr. Francis's testimony further supports the finding as to Day's ability to walk. Further, the ALJ specifically noted that Dr. Sands and Dr. Whitley gave little weight to Dr. Nargarsenker's opinions as to Day's ability to stand and walk [R. 30]; thus, the ALJ implicitly gave the state agency consultant's opinions as to Day's ability to walk more weight than Dr. Nargarsenker's opinion. [*Id.*] The ALJ properly weighed the various opinions about Day's ability to walk along with the other evidence and concluded that Day could walk for 1 hour at a time and for a total of 4 hours in an 8-hour work day.

Day next complains that the ALJ summarized the exhibits for Dr. Francis rather than allowing the medical expert to review the exhibits himself before testifying. Curiously, Day's present counsel also represented Day at the 2014 hearing before the ALJ. Yet counsel did not object to the ALJ summarizing the two exhibits. And when the ALJ asked counsel whether he had anything to add to her summary of each exhibit, each time

8

he responded in the negative. Thus, Day likely waived any right to complain about the ALJ summarizing the two exhibits for Dr. Francis. *See, e.g.*, *Mills v. Apfel,* 244 F.3d 1, 8 (1st Cir. 2001) ("it could cause havoc, severely undermining the administrative process," if issues not raised before the ALJ are not considered waived"). In any event, Exhibits M and N do not detract from the ALJ's findings. For example, in Exhibit M, Dr. Hittle noted that Day did not want to participate in vocational rehabilitation because he had a disability hearing in a month [R. 365]; Dr. Hittle also declined to increase Day's narcotic pain medication, noting that Day's relatively minor injuries did not require additional narcotics [*id.*]; and in March 2013, the physician said that Day's pain was adequately controlled. [R. 369.] And in August 2013, Dr. Hittle wrote that he had no intention of finding Day disabled. [R. 372.]

In addition, Day argues that the ALJ erred in rejecting Dr. Francis's testimony. But the ALJ did not reject Dr. Francis's testimony; instead, she gave his opinions "great weight." [R. 31.] Nor did the ALJ reject Dr. Francis's opinion that Day was capable of light work with some restrictions [R. 30]; in fact, most of Dr. Francis's opinions as to Day's functional abilities were consistent with the RFC the ALJ ultimately found Day to have. [R. 27.] One exception: Dr. Francis opined that Day could stand or walk for 2 hours of an 8-hour workday, whereas the ALJ found that Day could stand and walk for a total of 4 hours in an 8-hour workday. However, that finding is supported by substantial evidence, including the state agency medical consultants' opinions that Day could stand and/or walk for 6 hours of an 8-hour workday and, though more generally, Dr. Hittle's opinions.

Day also challenges the ALJ's RFC assessment, arguing that it does not accurately describe his impairments. And he contends that the ALJ failed to account for the limitations caused by his chronic pain disorder which made him unable to perform any full-time work. [*See Pl.'s Br. Supp. Compl.*, doc. 25, at 14-15.] But these arguments, like several others, are undeveloped and thus waived. *See Schomas*, 732 F.3d at 708 (stating "perfunctory and undeveloped arguments … are waived"). In any event, in a well-reasoned and thorough decision, ALJ de la Torre carefully considered the evidence in the record and adequately explained her RFC assessment. [*See* R. 19-31.] Her findings are supported by substantial evidence and her decision denying benefits should be affirmed.

### III.  Conclusion

For the reasons stated, the agency's final decision will be affirmed.

Date: 9/6/2016

*Denise K. LaRue*

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Electronic distribution to counsel of record